IN THE UNITED STATES DISTRICT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| FRANK B. MARENBACH and DEBRA MCKIBBIN,<br><br>    Plaintiffs,<br><br>    v.<br><br>ROBERT LAND,<br><br>    Defendant. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action<br>No. 16-9084 (JBS-AMD)<br><br>**MEMORANDUM OPINION** |

**SIMANDLE**, District Judge:

    Plaintiffs Frank B. Marenbach ("Marenbach") and Debra McKibbon ("McKibbon" and, collectively, "Plaintiffs") bring this professional negligence/legal malpractice claim against Defendant Robert Land, Esq. ("Land" or "Defendant") for failing to timely serve a proper Tort Claims Notice on Atlantic County while representing Plaintiffs in litigation arising out of an injury Mr. Marenbach suffered after falling into a pothole in Margate, New Jersey. [Docket Item 1.] This matter is before the Court on Defendant's motion for summary judgment on the basis that Plaintiffs cannot, as a matter of law, establish proximate causation as to their professional negligence/legal malpractice claim because, even if Defendant had timely filed the required Tort Claims Notice, Plaintiffs would not have prevailed in the underlying case against Atlantic County, often referred to as

"the suit within a suit." [Docket Item 9.] The principal issues to be decided are whether, in the context of the "suit within a suit," Atlantic County had notice of the dangerous condition and if Atlantic County's conduct was "palpably unreasonable." For the reasons discussed below, the answer to both questions is no. Accordingly, Defendant's motion for summary judgment will be granted. The Court finds as follows:[1]

1. **Factual and Procedural Background.** On July 4, 2009, Plaintiffs were walking together alongside Ventnor Avenue near Jefferson Avenue in the City of Margate when Marenbach stepped off the curb onto Ventor Avenue, intending to cross the street. [Docket Item 9-6 ("Marenbach Dep.") at 36:5-37:14; 109:12-112:24.] As he stepped off the curb, Marenbach's left foot immediately fell into a pothole on Ventnor Avenue, which caused him to suffer injuries to his left ankle and foot. [Docket Item 9-7 ("Pls.' Answers to Interrog.") at ¶ 2.] At the time of the incident, which occurred in the evening, it was dark outside and the weather was clear. (Id.) The asphalt depression (or "pothole") was a small area adjacent to the intersection

---

[1] For purposes of the instant motion and pursuant to Local Civil Rule 56.1, the Court looks to the Complaint [Ex. A to Docket Item 1 ("Compl.")] when appropriate, Defendant's Statement of Undisputed Material Facts [Docket Item 9-2 ("SMF")], Plaintiffs' Responsive Statement of Material Facts [Docket Item 11-1 ("RSMF")], and related exhibits and documents. Where not otherwise noted, the facts are undisputed by the parties.

crosswalk where the curbing and asphalt road surface meet, and also adjacent to a storm drain, but was not within the marked crosswalk itself. (Marenbach Dep. at 107:3-113:14 and Exs. FM-33 and FM-34 thereto) [see also Docket Item 9-10 ("Frazier Rep.") at 2-3.]

2. In September 2009, Plaintiffs engaged Mr. Land as counsel to pursue personal injury claims against any responsible parties arising out of this incident. (Compl. at ¶ 18.) To that end, Land timely served New Jersey Tort Claims Notices on the City of Margate and State of New Jersey. (SMF at ¶ 7; RSMF at ¶ 7.) Thereafter, Land discovered that Ventnor Avenue was actually "County Route 629," which was controlled by Atlantic County, and a Tort Claims Notice was untimely served on Atlantic County (i.e., after the New Jersey Tort Claims Act's ninety-day statutory period had concluded). (SMF at ¶ 8; RSMF at ¶ 8.)

3. In late winter or early spring of 2010, Plaintiffs retained Gerard Jackson, Esq. ("Jackson"), who filed a Motion for Filing of Late Tort Claim as to Atlantic County pursuant to N.J.S.A. § 59:8-9, which was denied by the New Jersey Superior Court, Law Division, Atlantic County and upheld by the New Jersey Superior Court, Appellate Division. (SMF at ¶¶ 9-10; RSMF at ¶ 9-10.) Jackson also filed a civil claim on behalf of Plaintiffs for Mr. Marenbach's injuries against the City of Margate in this Court, which was assigned to the Honorable Noel

3

L. Hillman. Frank B. Marenbach and Debra McKibbin, h/w v. City of Margate, Civil No. 11-3832 (D.N.J. filed on July 1, 2011). On April 29, 2013, Judge Hillman granted summary judgment in favor of the City of Margate, finding that Plaintiffs had not provided sufficient evidence to establish that the City of Margate "controls" Ventnor Avenue or that the City of Margate had actual or constructive notice of the alleged dangerous condition, a requirement under the New Jersey Tort Claims Act. Marenbach v. City of Margate, 942 F. Supp. 2d 488, 493-96 (D.N.J. 2013).

4.  On November 18, 2016, Plaintiffs filed the instant action in the Superior Court, Atlantic County, Law Division, alleging, inter alia, that "[a]t material times, Mr. Land was careless and negligent, both generally, and, in particular (but not limited to) by reason of his failure to provide the County of Atlantic with a timely ninety-day statutory notice of claim, such notice being a mandatory requirement to preserve such a claim under the New Jersey [Tort Claims Act]," and "[a]s a proximate and direct result of Mr. Land's professional negligence . . . , Plaintiff's rights of recovery under the [Tort Claims Act] as to the County of Atlantic were lost." (Compl. at ¶¶ 22-23.) Defendant removed this action to federal court on the basis of diversity jurisdiction under 28 U.S.C. §§ 1332 and 1441 [Docket Item 1], and then filed an Answer. [Docket Item 4.] Plaintiffs timely filed an Affidavit of Merit signed by

4

Keith J. Cohen, Esq., as required under N.J.S.A. § 2A:53A-29. [Docket Item 7.] Following discovery, Defendant moved for summary judgment. [Docket Item 9.] Plaintiffs filed a brief in opposition [Docket Items 11, 13], and Defendant filed a Reply. [Docket Item 12.] The pending motion is now fully briefed and ripe for disposition. The Court will decide the motion without oral argument pursuant to Fed. R. Civ. P. 78.

5. **Standard of Review.** At summary judgment, the moving party bears the initial burden of demonstrating that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once a properly supported motion for summary judgment is made, the burden shifts to the non-moving party, who must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). In reviewing a motion for summary judgment, the court is required to examine the evidence in light most favorable to the non-moving party and resolve all reasonable inferences in that party's favor. Scott v. Harris, 550 U.S. 372, 378 (2007); Halsey v. Pfeiffer, 750 F.3d 273, 287 (3d Cir. 2014).

6. A factual dispute is material when it "might affect the outcome of the suit under the governing law," and genuine when "the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." Anderson, 477 U.S. at 248. The non-moving party "need not match, item for item, each piece of evidence proffered by the movant," but must present more than a "mere scintilla" of evidence on which a jury could reasonably find for the non-moving party. Boyle v. Cnty. of Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998) (quoting Anderson, 477 U.S. at 252).

    7.   **Discussion.** To recover for legal malpractice in New Jersey, a plaintiff must prove: (1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney; (2) the breach of that duty by the defendant; and (3) proximate causation of the damages claimed by the plaintiff. Jerista v. Murray, 883 A.2d 350, 359 (N.J. 2005) For purposes of this motion, Defendant admits that Land and Plaintiffs had an attorney client relationship and that Land breached the duty of care owed to Plaintiffs to properly notify Atlantic County. [Docket Item 9-3 ("Def.'s Br.") at 13.] Thus, the sole disputed issue here is proximate causation.

    8.   Under New Jersey law, to prove proximate causation in a legal malpractice case, "a client seeking to recover damages against an attorney who failed to file suit within the applicable limitation period must 'establish the recovery [that] the client would have obtained if malpractice had not occurred.'" Polidoro v. Saluti, 675 F. App'x 189, 190–91 (3d

6

Cir. 2017) (quoting Frazier v. New Jersey Mfrs. Ins. Co., 667 A.2d 670, 676 (N.J. 1995)). To do so, a plaintiff may "proceed by way of a 'suit within a suit' in which a plaintiff presents the evidence that would have been submitted at a trial had no malpractice occurred." Garcia v. Kozlov, Seaton, Romanini & Brooks, P.C., 845 A.2d 602, 611-12 (N.J. 2004). Specifically, the plaintiff must show by a preponderance of the evidence that, but for the professional malpractice or other misconduct, "(1) he would have recovered a judgment in the action against the main defendant, (2) the amount of that judgment, and (3) the degree of collectability of such judgment." Id. (quoting Hoppe v. Ranzini, 385 A.2d 913, 917 (N.J. Super. Ct. App. Div. 1978)). Accordingly, to defeat summary judgment here, Plaintiffs must demonstrate that a reasonable fact finder could find that it is more likely than not they would have prevailed in a New Jersey Tort Claims Act case against Atlantic County if Mr. Land had timely filed a Tort Claims Act Notice, extending all reasonable factual inferences in favor of Plaintiffs as the parties opposing summary judgment.

9.   The New Jersey Tort Claims Act ("NJTCA" or "the Act"), N.J.S.A. § 59:4-1 to 14-4, governs claims against governmental entities arising from dangerous conditions on public property. Any application of the Tort Claims Act "must start from its guiding principle, that is, that immunity from tort liability is

7

the general rule and liability is the exception." Polzo v. County of Essex, 960 A.2d 375, 380 (N.J. 2008) ("Polzo I") (internal citations omitted). Under the Act, a plaintiff must show: (1) that the property was in a dangerous condition; (2) that the injury was proximately caused by the dangerous condition; and (3) that the dangerous condition created a foreseeable risk of injury. N.J.S.A. § 59:4-2. Additionally, a plaintiff must show either that "a negligent or wrongful act or omission" of a public employee created the dangerous condition or that the "public entity had **actual or constructive notice** of the dangerous condition . . . a sufficient time prior to the injury to have taken measures to protect against the dangerous condition." N.J.S.A. § 59:4-2(a)-(b) (emphasis added). The Act further provides that, even if a dangerous condition existed and the public entity was on notice, the public entity nevertheless will be immune from liability "if the action the entity took to protect against the condition or the failure to take such action was not **palpably unreasonable**." N.J.S.A. § 59:4-2 (emphasis added). In setting this high barrier to suit, the Legislature, for better or for worse, was not expecting public agencies to be free from negligence in protecting the public from dangerous conditions.

10. In support of the motion for summary judgment, Defendant argues that Plaintiffs could not prevail in the "suit

8

within a suit" against Atlantic County for two reasons: (1) Plaintiffs have not adduced evidence that Atlantic County had actual or constructive notice of the pothole; and (2) Atlantic County's inspection and maintenance methods were not, as a matter of law, "palpably unreasonable." (Def. Br. at 18-29.) The Court will address each argument in turn.[2]

    11.  <u>Whether Plaintiffs Can Establish That Atlantic County Had Notice of the Dangerous Condition.</u> As noted above, the NJTCA requires a plaintiff to demonstrate that the "public entity had actual or constructive notice of the dangerous condition." N.J.S.A. § 59:4-2(a)-(b). For the following reasons, the Court finds that Plaintiffs cannot make such a showing on this record.

    12.  Plaintiffs advanced a theory that "actual notice" could be found by a jury in this case because "[i]t can be reasonably inferred by evidence that the defect, its existence at [the] site for six months or more, coupled with a self-described frequent and careful inspection by County employees some 50 times in six months, that the County in fact knew of it: it was there to be seen, and the site was viewed some two hundred times by an expert whose duty, training and experience

---

[2] Defendant concedes for purposes of this motion that the pothole at Ventnor Avenue was a dangerous condition. (Def. Br. at 18.) The Court also finds that Plaintiffs have proffered sufficient admissible evidence from which a jury could reasonably determine that the pothole proximately caused Mr. Marenbach's injuries and that his injuries were foreseeable.

9

was road examination, surveillance and repair." [Docket Item 11-3 ("Pls.' Opp. Br.") at 19.] But this argument is unpersuasive and misses the point. To prove actual notice, a plaintiff must demonstrate that the public entity "had **actual knowledge** of the existence of the condition and knew or should have known of its dangerous character." N.J.S.A. 59:4-3(a) (emphasis added). Plaintiffs have proffered no evidence that Atlantic County had any knowledge of the existence of the pothole on Ventnor Avenue by way of pedestrian complaints, inspection reports, documented incident reports, testimony, or by other means. Mere speculation is not enough. Ries v. Curtis, 664 F. App'x 206, 209 (3d Cir. 2016) ("We agree with the District Court these allegations amount only to speculation and broad conjecture that [defendants] had actual knowledge of these defects. More is needed to overcome a motion for summary judgment than speculation and conjecture.") (internal citations omitted). Absent any evidence that Atlantic County knew about the pothole on Ventnor Avenue, Plaintiffs cannot establish that Atlantic County had actual notice.

13. In the alternative, Plaintiffs argue that Atlantic County had constructive notice of the dangerous condition on Ventnor Avenue based on, among other things: (1) expert testimony by Gregg W. Frazier, P.E. ("Frazier") that the pothole had been in existence for at least six months prior to the July

10

4, 2009 incident; and (2) the high frequency of Atlantic City's roadway inspections according to the County's designee, James McDougall ("McDougall"). The Court is, again, unpersuaded by Plaintiffs' argument.

14. The NJTCA constructively imputes notice of the dangerous condition to a public entity "only if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition." N.J.S.A. § 59:4-3(b). To that end, the New Jersey Supreme Court has held that "the mere existence of an alleged dangerous condition is not constructive notice of it," and that an expert report, alone, will be insufficient to establish constructive notice of the condition. Polzo I, 960 A.2d at 382. In that case, the plaintiff argued that a road condition that caused a fatal bicycle accident should have been noticed because it existed for a period of months, if not years, and because there had been many complaints about potholes in that area. Id. at 379. But, as the New Jersey Supreme Court explained, "the only evidence presented by plaintiff that the alleged dangerous condition qualified for constructive notice is the report of plaintiff's engineering expert. Standing alone, that report is insufficient to sustain plaintiff's burden." Id. at 382; see also Robinson v. City of Ocean City, 2012 WL 5621118, at *4

(D.N.J. Nov. 14, 2012) ("In the present case, Plaintiff's only evidence that the pothole met constructive notice requirements is . . . an expert report that does not establish that Ocean City had constructive notice.")

15. Here, Plaintiffs' expert concludes, in relevant part, "[t]he development of the [pothole on Ventnor Avenue], within a reasonable degree of engineering certainty, was most likely in place prior to the year 2009" (i.e., for more than six months before the July 4, 2009 injury), and that "[a]n adequate inspection of the Ventnor Avenue roadway surface six months before Mr. Marenbach's incident by the County of Atlantic maintenance staff would have identified the pedestrian pavement hazard and provided the County with sufficient time to repair the defect." (Frazier Rep. at 6, 9.) McDougall also testified that the County tried to conduct a weekly physical inspection of all roads within its jurisdiction, including Ventnor Avenue, and that McDougall had personally inspected Ventnor Avenue about 200 times during 2008 and 2009. [Docket Item 11-3 ("McDougall Dep.") at 15:5-18; 16:3-16.] Taken together, Plaintiffs argue that this shows Atlantic County had constructive notice of the dangerous condition of the pothole on Ventnor Avenue. The Court disagrees.

16. As in Robinson and Palzo, Plaintiffs rely exclusively upon an expert's net opinion to establish the **duration** of the alleged dangerous condition. But under New Jersey law, "a net

12

opinion alone is insufficient to sustain plaintiff's burden of establishing that the public entity was on constructive notice of a dangerous condition." Polzo I, 960 A.2d at 584. That Atlantic County apparently does a more thorough job inspecting its roads than Ocean City had in Robinson (see Pl. Opp. Br. at 12-13) is of no moment here. There is just no evidence beyond Frazier's report itself to establish that the pothole "had existed for such a period of time and was such an obvious nature" that Atlantic County had constructive notice of the dangerous condition. As in Robinson and Polzo I, this is simply not enough under New Jersey's standard which is highly protective of municipalities in such pothole cases. See also Marenbach, 942 F. Supp. 2d at 495 (finding on substantially same record that plaintiffs could not demonstrate that Margate City had constructive notice of the pothole on Ventnor Avenue).

17. <u>Whether Plaintiffs Can Establish That Atlantic County's Conduct Was Palpably Unreasonable.</u> Even if one were to assume that Atlantic County did have notice, its conduct was not "palpably unreasonable." In fact, Plaintiffs all but concede this point: "Plaintiffs herein concede that the road inspection practices of Atlantic County as described by Mr. McDougall were reasonable." See Pls.' Opp. Br. at 23 n.3) According to Plaintiffs, "their thesis is that given such practices, that the pothole as existent some six months at a minimum before this

13

accident, and that repair was not only feasible and inexpensive, but would have been a County priority." (Id.) In other words, Plaintiffs seem to argue that Atlantic County's conduct was "palpably unreasonable" because the County had actual or constructive knowledge of the dangerous condition of the pothole on Ventnor Avenue for six months **and** breached a duty of care by failing to repair it. Assuming arguendo Atlantic County had actual or constructive notice of the dangerous condition, which as discussed supra Plaintiffs cannot establish on this record, there is no evidence that Atlantic County's conduct was, at worst, anything more than ordinary negligence.

    18. "'Palpably unreasonable' means more than ordinary negligence, and imposes a steep burden on a plaintiff." Coyne v. State, Dept. of Transp., 867 A.2d 1159, 1166 (N.J. 2005). The term "implies behavior that is patently unacceptable under any given circumstances" and "it must be manifest and obvious that no prudent person would approve of its course of action or inaction." Id. at 1166-67 (quoting Kolitch v. Lindedahl, 497 A.2d 183, 187 (N.J. 1985). The Third Circuit has explained that in order to be "palpably unreasonable" under New Jersey law, actions must be the result of "capricious, arbitrary, whimsical or outrageous decisions of public servants." Waldorf v. Shuta, 896 F.2d 723, 738 (3d Cir.1990) (internal citations omitted). The question of palpable unreasonableness is generally decided

by the fact-finder as it constitutes a question of fact; "[n]evertheless, like any question of fact, the determination of palpable unreasonableness is subject to a preliminary assessment by the court as to whether it can reasonably be made by a fact-finder considering the evidence." Charney v. City of Wildwood, 732 F. Supp. 2d 448, 457 (D.N.J. 2010), aff'd, 435 F. App'x 72 (3d Cir. 2011).

19. In the road-maintenance context, the New Jersey Supreme Court has observed that "potholes and depressions are a common feature of our roadways. However, not every defect in a highway, even if caused by negligent maintenance, is actionable." Polzo v. County of Essex, 209 N.J. 51, 64 (2012) ("Polzo II"). As the Court explained, "[t]he term 'palpably unreasonable' – as used in [the New Jersey Tort Claims Act] – implies behavior that is patently unacceptable under any given circumstance. When a public entity acts in a palpably unreasonable manner, it should be obvious that no prudent person would approve of its course of action or inaction." Id. at 75-76 (internal citations omitted). Thus, "[t]he duty to refrain from palpably unreasonable conduct differs in degree from the ordinary duty of care that is owed under the negligence standard." Id. at 76 (internal citations omitted).

20. Here, Atlantic County deployed a windshield survey inspection program, whereby trained personnel would regularly

15

drive down County roads, visually inspect them for potholes or depressions, and either report it to their supervisor, call it into the dispatcher, or if in a position to do so, simply make the repair themselves.[3] (McDougall Dep. at 15:6-18:25; 83:1-85:19.) Plaintiffs concede Atlantic County's road inspection practices were "reasonable." (Pls.' Opp. Br. at 23 n.3); see also Robinson, 2012 WL 5621118, at *5 (holding that windshield method for inspection was not, as a matter of law, "unreasonable, let alone palpably unreasonable"). Nevertheless, Plaintiffs maintain that, because Atlantic County's inspection efforts were so thorough, the mere fact that the County did not identify and/or repair the pothole on Ventnor Avenue establishes that the County's conduct must have been "patently unreasonable." This argument, which closely resembles the doctrine of res ipsa loquitur, cannot be used to establish that Atlantic County's conduct was palpably unreasonable under the New Jersey Tort Claims Act. See Rocco v. N.J. Transit Rail Operations, Inc., 749 A.2d 868, 878-79 ("[The New Jersey] Tort

---

[3] In fact, Atlantic County does even more. In addition to the windshield method, Atlantic County has a public pothole reporting hotline and a regular practice of Township police calling in roadway imperfections when they see them. (McDougall Dep. at 34:20-40:20; 72:4-79:22.) It is not surprising that no one reported this shallow area of missing or deteriorated asphalt along the curb line, nor can one reasonably conclude that this area of pavement deterioration was so prominent or threatening to public safety that failure to detect and repair it was palpably unreasonable.

16

Claims Act requires proofs that go beyond those necessary to permit a res ipsa loquitur inference. Therefore, we conclude that res ipsa loquitur is not normally available in an action against a public entity grounded upon a dangerous condition of public property.") On this record, it cannot be held that Atlantic County's conduct was "palpably unreasonable." Accordingly, even if Plaintiffs could prove Atlantic County had notice, they would have still lost a NJTCA case against the County had Mr. Land filed a New Jersey Tort Claim.

21. **Conclusion**. For the reasons stated above, Defendant's motion for summary judgment will be granted and Plaintiffs' professional negligence/legal malpractice claims will be dismissed. An accompanying Order will be entered.

**August 27, 2018**             **s/ Jerome B. Simandle**
Date                                        JEROME B. SIMANDLE
                                                U.S. District Judge